IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PENSKE TRUCK LEASING COMPANY, L.P. and PENSKE LEASING AND RENTAL COMPANY | § § § § § § § § | C.A. NO. 4:20-CV-00345 |
| vs. | | |
| INFINITY COUNTY MUTUAL INSURANCE COMPANY | | JURY TRIAL REQUESTED |

# ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Penske Truck Leasing Company, L.P. and Penske Leasing and Rental Company, plaintiffs, bring this lawsuit against Infinity County Mutual Insurance Company in order to obtain the benefit of their contractual right under Infinity's Commercial Auto Policy to a defense against an underlying tort lawsuit in which they are named as defendants, and ultimately to obtain indemnification from Infinity for damages they may be liable to pay to the tort plaintiff and an intervenor, each claiming physical injury from a tractor-trailer rollover.

### PARTIES AND SERVICE

1. Plaintiff Penske Truck Leasing Company, L.P. ("**Penske**") is a Pennsylvania limited partnership with its principal place of business in Pennsylvania. It is a citizen of Pennsylvania.

2. Penske Leasing and Rental Company ("**Penske trust**") is a trust formed under the laws of Delaware, with its principal place of operations in Pennsylvania. It is a citizen of Pennsylvania.

3. Defendant Infinity County Mutual Insurance Company ("**Infinity**") is an insurance

company chartered under the laws of the State of Texas, with its principal place of business in the State of Texas. It is a citizen of Texas. It may be served with Summons through its registered agent: C T Corporation System at 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

## JURISDICTION AND VENUE

4.  The court has subject matter jurisdiction pursuant to 28 U.S.C. §1332 based upon diversity of citizenship between plaintiff and defendant. More than the jurisdictional minimum is at issue, as tort plaintiff Julio Reul-Guilliem seeks damages in excess of $1 million and intervenor Andy Veliz-Carrasco also seeks substantial but unspecified damages from Penske.

5.  The court is empowered to grant the requested relief pursuant to 28 U.S.C. §§2201 and 2202.

6.  There is personal jurisdiction over defendant because it is a citizen of the State of Texas, doing business in the State of Texas, and this lawsuit arises out of that business in seeking relief based upon a contract issued in the state of Texas, covering a Texas motor vehicle accident.

7.  Venue is proper in this District and Division because the insurance coverage at issue in this lawsuit exists under an insurance policy issued to Infinity's named insured (Texas Bakery Supply) in this District and Division and arises from a motor vehicle accident in this District and Division, allegedly caused by Penske's breach of maintenance obligations performed in this District and Division, which allegedly injured the tort plaintiff and tort intervenor.

## RELEVANT FACTS

8.  Julio Reul-Guilliem ("Guilliem") and Andy Veliz-Carrasco ("Carrasco"), each an employee of Texas Bakery Supply Houston, LLC ("Texas Bakery"), were in a truck leased by Texas Bakery from Penske when it rolled over as they made a turn, allegedly causing physical injuries for which they have sued. Guilliem was driving the truck in the course and scope of his employment

for Texas Bakery. Penske had entered into a contract with Texas Bakery, under which Penske leased the truck to Texas Bakery and agreed to perform maintenance and repair work on the truck. Guilliem and Carrasco allege in the tort lawsuit[1] that Penske negligently performed maintenance or repair on the truck being driven by Guilliem at the time of the accident, causing brake failure that resulted in loss of control and the truck rollover from which they claim injury. They have sued Penske, Penske trust and Texas Bakery for damages.

9. Penske trust owns property but is not engaged in business operations relevant to the tort lawsuit. It is joined as a plaintiff in this lawsuit because Guilliem and Carrasco sued it (without basis) in the tort lawsuit, it is listed as an additional insured on Infinity's policy, and (like Penske, the operating entity) it needs and is entitled to have its tort lawsuit defense costs paid by Infinity.

10. The contractual undertaking between Penske and Texas Bakery is stated in a Vehicle Lease Service Agreement ("the Lease"), which was in effect at the time of the December 4, 2017 accident at issue in the tort lawsuit. Section 9 of the Lease addresses "PHYSICAL DAMAGE AND LIABILITY COVERAGE." Part c. of section 9, captioned "**Liability Coverage**," requires Texas Bakery to "procure and maintain liability coverage for each vehicle, protecting "Customer [Texas Bakery] and Penske . . . in accordance with the standard provisions of a basic automobile liability policy," with a policy limit of at least $1 million.

11. Infinity's auto policy adds Penske and Penske trust as additional insureds via endorsement 4-1, captioned "Additional Insured/Interest Endorsement" (the "AI endorsement"). Part 3. of the AI endorsement states the following:

> We will pay for damages only if such damages arise out of acts or omissions of:

---

[1] Cause No. 2018-90064; *Julio Reul-Guilliem v. Texas Bakery Supply Houston LLC, Penske Truck Leasing Company, LP d/b/a Penske Leasing and Rental Company Unit 190667, PTL GP, LLC, Penske Leasing and Rental Company Unit 190667*; In the 234th District Court of Harris County, Texas ("the tort lawsuit")

      a.    **You** or an **Insured**; or

      b.    Any other person except as listed in 1. above.

Penske is the entity named in "1. above" in the AI endorsement.

12.    As indicated by its boldface font in the AI endorsement, "insured" is a defined term in Infinity's policy. The definition of "insured" in the Commercial Auto Policy form used by Infinity includes (as relevant here) the named insured, permissive users of its insured autos, and

      d.    anyone liable for the conduct of an **insured** described above but only to the extent of that liability. However, the owner or anyone else from whom **you** hire or borrow a covered **auto** is an **insured** only if that **auto** is a **trailer** connected to **your insured auto**.

Such standard "insured" status under a Commercial Auto Policy *form* (as opposed to an AI endorsement) does not apply to a party in Penske's position, beyond any vicarious liability it might have for the name insured's liability. Such narrow standard coverage is precisely why plaintiffs needed, sought and obtained *AI* status in Texas Bakery's policy, which is added by endorsement.

### PLAINTIFFS ARE "ADDITIONAL INSUREDS" ON THE ALLEGED FACTS

13.    AI status for plaintiffs is nominal and illusory unless it applies to *their own* negligence, not just to their (vicarious) liability for the negligence of an "insured" (something the policy form already provides). The Commercial Auto Policy form's limited grant of "insured" status for vicarious liability is obviously not what an AI aspirant is seeking. The very act of contracting for AI coverage (here, with Texas Bakery) indicates that a standard form's very limited extension of "insured" status (here, for vicarious liability) is insufficient for the contracting party's purposes. The issuance of an AI endorsement confirms that the insurer (here, Infinity) is providing broader "insured" status than exists under its policy form.

14.    The AI endorsement issued by Infinity, adding Penske and Penske trust as insureds on its auto policy, hinges "additional insured" status upon a simple causal connection ("arise out

4

of") between the AI's damages liability and the conduct ("acts or omissions") of *either* of two sets of actors. The first set of AI-coverage-triggering actors is "a. **You** or an **Insured,**" which here means Texas Bakery and Guilliem. The second set of actors is "b. Any other person except as listed in 1. above;" here any such person is yet to be determined.

15. What is crucial to recognize about the AI endorsement is that it does not predicate Penske's or Penske trust's coverage upon another insured's negligence. The AI endorsement requires only the simplest of causal connections between the AI's damages liability and the "acts of omissions" of an insured other than that AI. Additional insured status does *not* require that such "acts or omissions" (i.e., the conduct of Texas Bakery or Guilliem) fall below a standard of ordinary care, breach a duty, or cause any harm (although a tort is alleged by both Guilliem and Carrasco, who have sued Texas Bakery). The plain meaning of the AI endorsement is that plaintiffs have AI status so long as their alleged (or later, actual) damages liability is causally linked to something that another insured did or failed to do (e.g., drive a truck, turn over a truck, train a driver). That simple causal connection is the insurance industry's standard method of preventing an AI from having coverage for its own liability even when that liability is unconnected to its relationship to the named insured (e.g., when the AI's liability arises from its relationship with a different business).

16. The "arise out of" ("but for") causal connection required by the AI endorsement is established here by the fact that the truck rollover from which Guilliem and Carrasco claim injury occurred in the course and scope of their employment with Texas Bakery, with Guilliem driving the truck. The truck's rollover plainly arose from an insured's operation of the truck. Had Guilliem not been driving the truck and turning, it would not have rolled over and Penske and Penske trust would not have been sued. Their alleged liability is thus causally connected to Penske's operations for Texas Bakery rather than Penske operations unrelated to Texas Bakery. That is the entire point

of the AI endorsement's "arise out of" requirement, as. Texas precedent confirms.

17.     Neither can Infinity say that Penske and Penske trust lack AI status because they are excluded from the second category of actors listed in the AI endorsement ("b. Any other person except [Penske and Penske trust]"). The breadth of that second category of actors only underlines the point that the AI endorsement does not insure Penske and Penske trust in isolation, but only in connection acts or omissions of Texas Bakery or others in connection with the ownership, maintenance or use of its insured motor vehicles.

### INFINITY'S ASSERTED POLICY DEFENSES ARE INAPPLICABLE

18.     Infinity denied coverage to Penske and Penske trust, asserting exclusions 1, 2, 3, 9 and 12 in its Commercial Auto Policy. Counsel for the Penske entities wrote to Infinity on October 4, 2019, explaining why those exclusions do not bar a duty to defend them (the only issue ripe for adjudication, given lack of a judgment). Infinity responded on October 16, 2019, addressing none of the Penske entities' arguments for a defense but stating only that "our position remains unchanged" and declining to defend them. This lawsuit has thus become necessary.

19.     Infinity's reasons for refusing to defend Penske and Penske trust, its additional insureds, consist of the following exclusions, excerpted in relevant part:

- Exclusion 1: "liability assumed under any contract or agreement."

  This provision does not apply to the Penske entities as additional insureds. That coverage is for liability imposed by law, not just liability assumed by contract.

- Exclusion 2: "any obligation for which the insured or the insurer of that insured may be held liable under any workers' compensation, unemployment compensation, or disability benefits law or under any similar law."

  This does not apply because neither Penske entity employed Guilliem or Carrasco, who do not say Penske or its insurer has any such potential liability.

- Exclusion 3: "Bodily injury to any fellow employee of yours arising out of and in the course of the fellow's employee's employment or while performing duties related to the conduct of your business."

  This does not apply because neither Guilliem nor Carrasco is a fellow employee or an employee of either Penske entity, nor was either man performing duties related to the conduct of any Penske entity's business.

- Exclusion 9: "Bodily injury to: a. An employee of the insured, arising out of and in the course of: i. Employment by the insured; or ii. Performing the duties related to the conduct of the insured's business."

  William and Carrasco were employees of Texas Bakery, not of Penske or Penske trust. This exclusion does not apply to Penske or Penske trust because "the insured," as used in insurance policies, refers to *the insured whose coverage is in issue* (i.e., Penske and Penske trust). Also, exclusion 9's exception applies to "liability assumed by the **insured** [Texas Bakery] under an **insured contract**." Texas Bakery agreed, in its Lease with Penske, to indemnify Penske for liability arising out of Penske's operations for Texas Bakery, including liability arising from Penske's own negligence.

- Exclusion 12: "Bodily injury to you, as an individual or to an insured."

  This exclusion is inapplicable. "You" means Texas Bakery, a legal entity that could not and did not suffer "bodily injury." The exclusion cannot bar coverage for liability for injury to an insured who is an employee (such as Guilliem and Carrasco) because exclusion 9 more specifically addresses such liability and does not apply when (as here) the liability is assumed under an "insured contract." Exclusion 12 must therefore be construed as applicable only to non-employee insureds, in order to avoid contradicting exclusion 9. Exclusion 12 is

7

>at best ambiguous about its application to employees, and such ambiguity must be construed in favor of coverage.

Infinity has not attempted to explain or justify its reliance upon any of those exclusions in denying a defense to Penske.

20. Because none of the exclusions cited by Infinity supports denial of a defense to Penske, Infinity has breached its contractual obligations to Penske by refusing to defend it in the tort lawsuit against the Plaintiff's Petition of Guilliem and the Petition in Intervention of Carrasco.

**COVERAGE FOR TEXAS BAKERY'S CONTRACTUAL INDEMNITY OBLIGATION TO PENSKE**

21. Section 10 of the Lease between Penske and Texas Bakery bears the caption: "**INDEMNIFICATION**." Section 10 requires that Texas Bakery defend and indemnify Penske

>from any and all claims, suits, costs, losses, damages, expenses (including a reasonable attorneys' fees) and liabilities (even if Penske is claimed to have been or is proven to be negligent) arising from: . . . (C) the ownership, use, selection, possession, maintenance, and/or operation of any vehicle; (D) . . . any and all injuries (including death) or property damage sustained by customer [Texas Bakery] or any driver, agent, servant or employee of customer.

That is an enforceable indemnity provision under Texas law, being both express and conspicuous (the section 10 text in the Lease is in all-caps).

22. Infinity's policy form defines "insured contract" to include:

>e. The part of any contract or agreement pertaining to your business . . . under which you assume the tort liability of another to pay for **bodily injury** or **property damage** to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;
>
>f. That part of the contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your employees, of any auto.

The section 10 indemnification provision in the Lease triggers part e., and the Lease itself triggers part f., of the "insured contract" definition. As such, the "insured contract" exception to the

exclusion of liability for injury to an employee (no. 9) restores for Penske any coverage that would otherwise have been removed by that exclusion.

### DECLARATORY RELIEF & DAMAGES

23. This Complaint for Declaratory Judgment raises a question of contract interpretation that, at least for the duty to defend, can be resolved as a matter of law. Guilliem's and Carrasco's tort lawsuit pleadings allege they were employees of Texas Bakery, in the course and scope of employment, at the time of their rollover accident in a Freightliner truck owned and maintained by Penske. Their pleadings identify the truck by unit number (190667), allowing confirmation that it is an insured auto under Infinity's policy. Penske's and Penske trust's alleged liability thus arises from the acts of Reul-Guilliem—i.e., driving the truck when it rolled over. It may also—but need not—arise from his omissions. The Penske entities' AI status and coverage does not require that Guilliem or Texas Bakery have been negligent or a cause of the truck rollover, although Texas Bakery is sued.

24. Infinity has a duty to defend Penske and Penske trust under Texas' eight corners rule. It has breached its contractual obligations in failing to do so. Infinity owes reimbursement for the Penske entities' legal expense from the date they first requested a defense from Infinity. Penske and Penske trust seek a judgment declaring those obligations, retrospectively and prospectively, and recovery of its litigation costs including attorney's fees, pursuant to Tex. Civ. Prac. & Rem. Code §§37.003, 37.004, 37.009 and 38.001.

25. Infinity's refusal to pay the Penske entities' costs of defense when its obligation to do so is reasonably clear, and doing so without providing a reasonable explanation of the basis for its decision, violates Tex. Ins. Code §541.060(a)(2) and (a)(3). The Penske entities, as plaintiffs, are entitled to recover actual damages, costs and attorney's fees for such violations pursuant to Tex.

Ins. Code §541.152. Infinity has also violated Tex. Ins. Code §542.058 by failing to promptly pay Penske's and Penske trust's legal expense in defending the tort lawsuit, and is thus liable for 18% interest on unreimbursed tort lawsuit legal expense pursuant to Tex. Ins. Code §542.060.

26.     Infinity is also liable to Penske and Penske trust for their attorney's fees and costs incurred in this lawsuit, and for pre-judgment interest on that amount, pursuant to the statutes cited above. This lawsuit has been made necessary by Infinity's refusal to fulfill its contractual duty to defend Penske and Penske trust.

### DEMAND FOR JURY TRIAL

Plaintiffs assert their rights under the Seventh Amendment to the U.S. Constitution and, in accordance with Federal Rule of Civil Procedure 38, request a trial by jury of any fact issues.

### CONCLUSION

Penske Truck Leasing Company, LP. and Penske Leasing and Rental Company therefore pray that Infinity County Mutual Insurance Company be summoned to appear in this action, and that these plaintiffs have a declaratory judgment and recovery against Infinity as outlined above, and for such further relief to which it may be entitled..

    Respectfully submitted,

    /s/*Jack McKinley*
    Robert L. Ramey
    State Bar No.  16498200
    Jack McKinley
    State Bar No. 13716300
    750 Bering, Suite 600
    Houston, Texas 77057
    Telephone:  (713) 266-0074
    Facsimile:  (713) 266-1064
    E-service: rcqz-eservice@ramey-chandler.com
    **Attorneys for Plaintiffs**

OF COUNSEL:
RAMEY, CHANDLER, QUINN & ZITO, P.C.